UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eileen George,<br><br>                Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of the<br>Social Security Administration,<br><br>                Defendant. | Case No. 09cv2084 WQH (PCL)<br><br>REPORT AND RECOMMENDATION:<br><br>DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 13]<br><br>and<br><br>GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 14]. |

      Plaintiff Eileen George has filed a complaint seeking judicial review of Defendant Social Security commissioner Michael J. Astrue's denial of her application for Supplemental Security Income disability benefits pursuant to the Social Security Act. (Doc. 1.) Plaintiff has filed a Motion for Summary Judgment (doc. 13), and Defendant has filed a Cross-Motion for Summary Judgment (doc. 14) and a Response in Opposition to Plaintiff's motion (doc. 15). Plaintiff has argued that the Administrative Law Judge's findings that Plaintiff retained the residual functional capacity to perform light work and that Plaintiff could perform such work as a school nurse were not supported by substantial evidence. (Doc. 13, at 4-7.) For the reasons set forth below, the Court recommends that Plaintiff's motion be DENIED and that Defendant's motion be GRANTED.

## I. PROCEDURAL HISTORY

On September 27, 2006, Plaintiff filed an application for disability insurance benefits, alleging disability since September 14, 2006. (A.R. 164.) The Commissioner of the Social Security Administration denied the application on November 16, 2006. (A.R. 98.) Plaintiff requested reconsideration of the decision on December 14, 2006, but the Commissioner again denied her application. (A.R. 105.) Plaintiff then requested a hearing and, on March 17, 2009, appeared with counsel and testified before Administrative Law Judge (ALJ) Peter J. Valentino. (A.R. 31-81.) In a decision dated March 31, 2009, the ALJ found that Plaintiff was not disabled given her residual functional capacity for a reduced range of light work and her ability to perform the occupation of school nurse. (A.R. 21-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (A.R. 1-5.) Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## II. ADMINISTRATIVE RECORD

Plaintiff was born on March 5, 1952. (A.R. 24.) She completed 15 years of formal education including a two-year nursing degree and worked as a nurse/general duty, community health nurse, insurance clerk, and home attendant. (A.R. 8, 24.) Plaintiff attributed her inability to perform such work to a neck injury, diabetes mellitus, and right ankle and back pain. (A.R. 24.) Plaintiff also complained of bilateral foot pain, left foot drop, leg cramps, mood swings, memory deficiencies, and obesity. (A.R. 24.)

A. Medical Evidence

1. Treating Physicians

On November 10, 2005, Plaintiff sustained a work-related injury that caused neck and upper back pain. (A.R. 467.) MRI scans revealed evidence of degenerative disc disease especially at the C4-5 level of her cervical spine. (A.R. 327.) Since March 6, 2006, Dr. Jean-Jacques Abitbol, a spine surgeon, evaluated and treated Plaintiff for cervical radiculopathy. (A.R. 425.) Dr. Abitbol did not recommend surgical intervention but rather physical therapy. (A.R. 425.) Dr. Abitbol assigned 70% of the total partial disability to preexisting degenerative changes, with the balance due to the work-related accident of 11/10/05. (A.R. 428.) Dr. Abitbol noted that

2                                                                                       09cv2084 WQH

Plaintiff's pain was under control and that she had been able to return to work full duty in 2006. (A.R. 425-429.) Finding that Plaintiff lost approximately 25% of her preinjury capacity for performing activities involving physical effort, Dr. Abitbol opined that Plaintiff was able to return to her customary occupation in an unrestricted fashion despite her permanent partial disability. (A.R. 428.)

Dr. Abitbol again provided an orthopedic spine consultation and treated Plaintiff on April 3, 2008. (A.R. 385.) Dr. Abitbol noted that Plaintiff was five feet, four inches tall, weighed 250 pounds, and had diabetes. (A.R. 387.) Plaintiff complained of neck pain, with pain radiating into both arms, more so on the right than the left. (A.R. 389.) Citing MRI evidence of severe right and moderate left foraminal narrowing, Dr. Abitbol offered Plaintiff the option of cervical discectomy and fusion, which Plaintiff declined to do at the time. (A.R. 389.) Dr. Abitbol rejected the opinion of Dr. George Schwab, an orthopedic surgeon with no training in spinal abnormalities, who found a 0% impairment; instead, Dr. Abitbol concluded that Plaintiff's condition in her spine was permanent and stationary. (A.R. 389-390.)

On March 13, 2009, Dr. Michael D. Walker of the Southern Indian Council evaluated Plaintiff and filled out a Residual Functional Capacity Questionnaire. (A.R. 468-471.) Dr. Walker diagnosed Plaintiff with diabetes mellitus, osteoarthritis, a herniated disc at the L5-S1 level of her lumbar spine, and cervical radiculopathy. (A.R. 468.) Dr. Walker identified depression and anxiety as affecting her physical condition. (A.R. 469.) Dr. Walker recommended more severe work-related limitations, stating that Plaintiff could only sit for one hour at a time and stand for fifteen minutes at a time, would need to rest every 30 minutes, could only carry less than ten pounds occasionally, and would have to miss about four days of work a month due to her impairments. (A.R. 469-471.)

2. Evaluating and Consulting Physicians

In June of 2008, Dr. Sidney Levine, a board-certified orthopedic surgeon, examined and evaluated Plaintiff's injury and declared her permanent and stationary. (A.R. 411.) Dr. Levine noted that Plaintiff was five feet, four inches tall, weighed 249 pounds, ambulated with a cane, and had diabetes. (A.R. 414-419.) Dr. Levine diagnosed Plaintiff with cervical spine disability and

thoracic spondylosis, precluding heavy work. (A.R. 411-16.) In support of his diagnosis, Dr. Levine cited x-rays, a MRI study, palpable muscle spasms, and a limited range of motion of Plaintiff's cervical spine. (A.R. 416.) Dr. Levine noted that Plaintiff had lost approximately 50 percent of her preinjury work capacity for performing work involving physical effort. (A.R. 417.) Although Dr. Levine did not rule out the possibility of surgical intervention, he concluded that no vocational rehabilitation was necessary because Plaintiff had found employment compatible with her disability. (A.R. 419.)

B. Administrative Hearing

On March 17, 2009, ALJ Peter J. Valentino conducted a hearing on Plaintiff's disability claims. (A.R. 24.) The Plaintiff appeared in person, represented by her attorney. (A.R. 24.) Plaintiff testified about her work history, including the last time she worked in January of 2009, (A.R. 38-68), and about her injuries over the years, (A.R. 50-66). Vocational Expert Mark Remas also testified. (A.R. 71-81.) He reported that Plaintiff performed the following past relevant work: nurse/general duty, which is skilled medium work; community health nurse, which is skilled medium work; insurance clerk, which is semi-skilled sedentary work, and home attendant, which is semi-skilled medium work. (A.R. 71.) Assuming that Dr. Walker's assessment was correct that Plaintiff had severe work-related limitations, Mr. Remas testified that Plaintiff could not sustain work. (A.R. 71.) Assuming that Plaintiff's residual functional capacity was for light work with the restrictions noted by the agreed medical examiner Dr. Levine, Mr. Remas responded that she would be capable of doing light sedentary work such as an insurance clerk. (A.R. 73.) Under this scenario, Mr. Remas also proposed the option of a school nurse, which he classified as light work with 500 such jobs in the region, 75,000 nationally. (A.R. 74.) In response to Plaintiff's question that a public health license was required for the job of school nurse, Mr. Remas responded that he did not think that one was required. (A.R. 75.)

### III. ALJ DECISION

The ALJ sought to determine whether Plaintiff was disabled under sections 216(I) and 223(d) of the Social Security Act. (A.R. 20.) Although the ALJ found that Plaintiff had a combination of severe physical impairments which imposed significant work-related limitations

including the inability to perform her past relevant work, the ALJ concluded that she retained the residual functional capacity to perform substantial gainful activity and thus had not been under a disability as defined under the Act from September 14, 2006 through the date of his decision. (A.R. 25.)

The ALJ noted that Plaintiff sustained a work-related injury on November 10, 2005, resulting in neck and upper back pain, and received treatment since March 6, 2006 from Dr. Jean-Jacques Abitbol, a spine surgeon. (A.R. 25.) The ALJ highlighted the following from Dr. Abitbol's reports: that Plaintiff had a painful range of motion in her neck and evidence of cervical radiculopathy; that Dr. Abitbol offered to do a cervical discectomy and fusion; that Plaintiff refused this treatment; that Plaintiff's condition was permanent and stationary; and that Plaintiff could return to her work without restrictions. (A.R. 26.)

The ALJ then noted that Plaintiff's condition was also declared permanent and stationary by Dr. Levine, a board-certified orthopedic surgeon, in his June 2008 evaluation. (A.R. 26.) The ALJ pointed out that Dr. Levine cited x-rays, a MRI study, palpable muscle spasms, and a limited range of motion of Plaintiff's cervical spine in diagnosing her with cervical neck strain with a history of radicular syndrome, cervical disc disease at the C4-5 and C5-6 levels, and thoracic spondylosis. (A.R. 26.) The ALJ stated that although Dr. Levine did not rule out the possibility of future cervical surgery, Dr. Levine found no vocational rehabilitation was necessary because Plaintiff found work compatible with her disability. (A.R. 26.)

In contrast, the ALJ described Dr. Michael Walker's report of March 13, 2009 which imposed work-related limitations that would render Plaintiff disabled due to the inability to perform even sedentary work. (A.R. 27.) The ALJ noted that Dr. Walker attributed Plaintiff's disability due to diabetes mellitus, osteoarthritis, a herniated disc at the L5-S1 level of her lumbar spine, cervical radiculopathy, depression, and anxiety. (A.R. 27.)

However, the ALJ rejected the work-related limitations identified by Dr. Walker. (A.R. 27.) The ALJ gave the following reasons: 1) Dr. Walker's opinions were controverted by substantial evidence in the record, including Plaintiff's other treating physician, Dr. Abitbol; 2) Unlike Dr. Abitbol, who is an orthopedic surgeon and a spinal specialist, Dr. Walker is a family

practitioner whose opinion is not entitled to as much weight as that of Dr. Abitbol; 3) Dr. Walker failed to cite any objective clinical findings to support his assessment; and 4) the other treating sources at the Southern Indian Health Council, where Dr. Walker is employed, cited the absence of any evidence of decreased range of motion, pain, weakness, or swelling in the muscles or joints; the absence of neurological deficits, weakness, dizziness; the absence of visual problems despite having diabetes; and the absence of cardiovascular problems.  (A.R. 27.)

Having considered Plaintiff's medical record, the ALJ found that despite Plaintiff's impairments, she could lift and carry ten pounds frequently and twenty pounds occasionally, stand or walk and sit for six hours each in an eight-hour day, and perform occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, and crawling, and frequent handling, reaching, and fingering.  (A.R. 27.)  With Plaintiff doing such work, the ALJ found that she would not experience severe or disabling pain or any other disabling symptoms, including depression, anxiety, or cognitive deficits.  (A.R. 27.)

Having given the aforementioned assessment of Plaintiff's residual functional capacity, the ALJ asked the vocational expert, Mark Remas, for his assessment of Plaintiff's ability to work. (A.R. 28.)  The ALJ adopted the following assessment of Mr. Remas: that Plaintiff was unable to perform her past relevant work and that Plaintiff could perform light skilled work such as that of a school nurse, which there are 500 jobs in the San Diego area and 75,000 jobs in the national economy.  (A.R. 29.)

After considering the entire record, the ALJ made the following findings of fact and conclusions of law:

1) Plaintiff met the insured status requirements of the Social Security Act.

2) Plaintiff had not engaged in substantial gainful activity since September 14, 2006.

3) Plaintiff had the following severe impairments: cervical disc disease, thoracic spondylosis, and diabetes mellitus.

4) Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5) Plaintiff retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for more than occasional climbing of ramps and stairs; more than occasional balancing, stooping, kneeling, crouching, crawling, or over head work activity; and more than frequent handling, reaching, and fingering.

6) Plaintiff was unable to perform any past relevant work.

7) Plaintiff was born on March 5, 1952 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. Plaintiff subsequently changed age category to advanced age.

8) Plaintiff had at least a high school education and is able to communicate in English.

9) Plaintiff acquired work skills from past relevant work which are transferable to the occupation of school nurse.

10) Plaintiff acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, including the occupation of school nurse, which is skilled as light work with 500 jobs in the San Diego economy and 75,000 jobs in the national economy.

11) Plaintiff had not been under a disability from September 14, 2006 through the date of the decision.

### IV. STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. § 423 (d)(1)(A), (2)(A) (West 2004). An applicant must meet both requirements to be "disabled" under the Act. Id.

A. Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently

working in any substantial gainful activity. If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Whether the claimant's impairment is severe. If not, the claimant is not disabled. If so, the evaluation proceeds to step three. (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Whether the claimant is able to do any work she has done in the past. If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Whether the claimant is able to do any other work. If not, the claimant is disabled. Conversely, if the Commissioner can establish there are significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 CFR § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

### B. Judicial Review

Sections 206(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008) (quoting Andrews, 53 F.3d at 1039). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed. Id. (citation and quotations omitted). "A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing

1  the Commissioner's decision. 42 U.S.C.A. § 405(g). This matter may also be remanded to the
2  Social Security Administration for further proceedings. Id.

### V. DISCUSSION

A. ALJ's Residual Functional Capacity Finding Is Supported by Substantial Evidence

Plaintiff contends that the ALJ improperly relied on the findings and opinions of Plaintiff's treating orthopedic physician Dr. Abitbol to discount the findings and opinions of her other treating physician Dr. Walker in concluding that she retained the residual functional capacity to perform light work. (Doc. 13, at 7-8.) Plaintiff also contends that the ALJ substituted his own opinions instead of calling a medical expert in determining Plaintiff's impairments and work capabilities. (Id. at 8.)

Although a treating physician's opinion is generally given great weight in a disability determination, an ALJ may decline to give controlling weight to such an opinion under certain circumstances. See Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). For example, when faced with the conflicting opinions of two treating physicians, the ALJ has the discretion to resolve the conflict. See Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988). If the ALJ decides to disregard one of the treating physician's testimony, he "'must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.'" Id. at 1339 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). The ALJ may decide to give a treating physician's opinion little to no weight if the physician "offers an opinion on a matter not related to [his] area of specialization . . . and presents no support for [his] opinion on the matter." Holohan v. Massanari, 246 F.3d 1195, 1202-03 n.2 (9th Cir. 2001). With substantial justification, the ALJ may give more weight to the opinion of an agreed medical examiner, which is considered expert evidence in a disability determination, see SSR 96-6p, 1996 WL 374180, at *2-3, than to the opinion of a treating physician. See Batson, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the ALJ gave legitimate reasons for disregarding Dr. Walker's opinion that Plaintiff was limited to less than sedentary work and adopting the opinion of Plaintiff's other treating physician Dr. Abitbol, who found that Plaintiff could return to her customary occupation

without restrictions.  As Plaintiff had orthopedic problems, namely cervical and thoracic spinal degeneration, the ALJ acted within his discretion in giving more weight to the opinion of Dr. Abitbol, who specialized as an orthopedic spine surgeon and substantiated his opinions with evidence, than to the opinion of Dr. Walker, who practiced family medicine and failed to fully support his clinical findings.  The treatment records from Southern Indian Health Council, where Dr. Walker practiced medicine, failed to show any evidence of decreased range of motion, pain, weakness, or swelling in the muscles or joints; evidence of neurological deficits, weakness, or dizziness; evidence of visual problems despite having diabetes; or evidence of cardiovascular problems.  Moreover, Dr. Walker's opinion was negated by Plaintiff's own work history, which showed that Plaintiff continued to perform jobs that required light sedentary work after the onset of her disability.  On the other hand, Dr. Abitbol cited MRI evidence of severe right and moderate left foraminal narrowing to support his diagnosis of cervical radiculopathy and referenced her work history in finding that despite her partial permanent disability she was able to return to her customary occupation in an unrestricted fashion. Furthermore, the ALJ included in the record the expert opinion of Dr. Levine, also a specialist in the orthopedic field, who concurred with Dr. Abitbol and supported his evaluation with x-rays, an MRI study, and her work history.  Thus, Plaintiff is incorrect in arguing that the ALJ substituted his own opinions in place of an examining physician or medical expert; rather, the ALJ properly weighed the conflicting opinions of Plaintiff's treating physicians and supported his finding that Plaintiff retained the residual functional capacity to perform light work with substantial evidence.

B. ALJ Sufficiently Supported Finding that Plaintiff Could Perform Work in National Economy

Plaintiff contends that the ALJ's finding that Plaintiff could perform substantial gainful activity existing in significant numbers in the national economy is not supported by substantial evidence. (Doc. 13-1, at 9-10.)  Specifically, Plaintiff takes issue with the finding that she could be employed as a school nurse because she does not possess a school nurse services credential and a four-year college degree, both of which Plaintiff claims are requirements to be employed as a school nurse in California.  (Id.)

As the Social Security Act states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The term "national economy" refers to work existing "in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.960(c)(1). Even if the claimant presents credible evidence indicating the inability of the claimant to perform a particular job in the region where the claimant lives, the "failure to disprove the existence of [available] jobs on a national scale would leave the ALJ's finding intact." Hoffman v. Astrue, 2010 WL 1138340, * 14 (W.D. Wash. Feb. 8, 2010) (quoting Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987)).

Here, the vocational expert testified that a person with Plaintiff's residual functional capacity could perform 500 jobs regionally in the San Diego area and 75,000 jobs nationally as a school nurse. The vocational expert also testified that he did not think that a public health license was required for the job of a school nurse in the national economy. Even if Plaintiff is correct that she is not qualified to be a school nurse in the state of California because she lacks the proper credentials, Plaintiff failed to put forth any evidence that the remaining 49 states in the national economy require a four-year degree or a special credential as qualifications for employment. As Plaintiff failed to disprove that she could perform the job of school nurse in other regions of the country, Plaintiff left intact the ALJ's finding that there exists significant number of jobs in the national economy that Plaintiff is qualified to perform.

## VI. CONCLUSION

For the reasons set forth above, the Court recommends denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment.

This report and recommendation is submitted to the Honorable William Q. Hayes, the United States District Judge assigned to the case, pursuant to 28 U.S.C. §636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **October 15, 2010**. The document should be captioned "Objections to Report and Recommendation." Any

1  reply to the objections shall be served and filed on or before **October 28, 2010**. The parties are
2  advised that failure to file objections within the specific time may waive the right to appeal the
3  district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4         IT IS SO ORDERED.
5  DATED: October 1, 2010

7                                   Peter C. Lewis
                                    U.S. Magistrate Judge
8                                   United States District Court

10  cc: All Parties and Counsel of Record